UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:20-cv-62411

AFFINITY RESOURCES, LLC,

    Plaintiff,

v.

KANSAS MARINE, INC.,

    Defendant.
_____/

## COMPLAINT

Plaintiff Affinity Resources, LLC, brings this action against Defendant Kansas Marine, Inc., stating as follows:

## PARTIES

1. Plaintiff is a Florida limited liability company with a principal place of business at 800 W Cypress Creek Road, Suite 430, Fort Lauderdale, FL 33309.

2. Plaintiff's member, Affinity Holdings, LLC is a Florida limited liability company with a principal place of business located at 800 W Cypress Creek Road, Suite 430, Fort Lauderdale, FL 33309.

3. Defendant is a California corporation with a principal place of business at 625 Kohler Street, Los Angeles, CA 90021.

## JURISDICTION AND VENUE

4. There is complete diversity between the parties pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of Florida and Defendant is a citizen of California.

5. The amount in controversy requirements of 28 U.S.C. § 1332 are satisfied because more than $75,000.00 is at issue, exclusive of costs, interest and attorney's fees.

6. This action properly lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because facts giving rise to this action occurred within this District and the home office of the Plaintiff is located within this District.

7. Venue is appropriate in this court.

## NATURE OF THE ACTION

8. Plaintiff brings this breach of contract action to recover a $162,195.22 principal balance for staffing services rendered.

## FACTS COMMON TO ALL ALLEGATIONS

9. Plaintiff is a diversified staffing company serving clients in the accounting, finance, aviation, engineering, healthcare, information technology, manufacturing, office, personnel, scientific, medical and warehouse industries.

10. Defendant is a food distribution company that serves cruise lines with culinary and hospitality products.

11. On or about November 20, 2019, Plaintiff and Defendant entered into a Staffing Service Agreement (the "Agreement"). The Agreement is attached as Ex. A.

12. Pursuant to the Agreement, Plaintiff agreed to locate, recruit and place its personnel on assignment with Defendant. Plaintiff agreed to provide Defendant with the services of its employees while Plaintiff maintained responsibility for paying the employees.

13. In exchange, Defendant agreed to pay Plaintiff for the staffing services Plaintiff provides.

14. Pursuant to weekly invoices, Plaintiff billed Defendant for Defendant's use of Plaintiff's employees.

15. The Agreement provides that Defendant must render payment on each invoice within 15 days of the date of the invoice.

16. If payment is not made on an invoice within 30 days of its due date, late fees accrue at 1.5% per month.

17. As provided in the Agreement, Defendant is obligated to reimburse Plaintiff for all costs of collections, including reasonable attorneys' fees.

18. The Agreement further provides that if Defendant disputes any invoice, it must give notice within 10 business days of the date of the invoice. Failure to give notice is a waiver of the right to contest the invoice. All undisputed amounts must be paid notwithstanding the existence of a dispute on other items.

19. The Agreement additionally provides that the prevailing party will have the right to collect from the other party its reasonable attorneys' fees and costs.

20. Plaintiff performed its contractual obligations by providing Defendant with staffing services pursuant to the Agreement. Plaintiff provided its employees to Defendant for Defendant's use while Plaintiff paid the employees.

21. From February 15, 2020 through July 23, 2020, Plaintiff issued weekly invoices to Defendant which corresponded to the services Plaintiff provided to Defendant.

22. For the five weeks between February 15, 2020 and March 14, 2020, Defendant's weekly invoices averaged $24,891.80 for a total of $124,459.06.

23. From March 14, 2020 through July 23, 2020, Defendant incurred an additional $37,736.16 in charges for a total principal amount of $162,195.22.

24. Defendant did not dispute any of the invoices.

25. The following chart reflects Defendant's outstanding invoices.

| Type | Date | Num | Terms | Due Date | Aging | Open Balance |
|---|---|---|---|---|---|---|
| Invoice | 2/15/2020 | 45295 | Net 15 | 3/1/2020 | 235 | 22,753.76 |
| Invoice | 2/22/2020 | 45320 | Net 15 | 3/8/2020 | 228 | 28,815.67 |
| Invoice | 2/29/2020 | 45485 | Net 15 | 3/15/2020 | 221 | 26,603.99 |
| Invoice | 3/7/2020 | 45531 | Net 15 | 3/22/2020 | 214 | 25,095.88 |
| Invoice | 3/14/2020 | 45608 | Net 15 | 3/29/2020 | 207 | 21,189.76 |
| Invoice | 3/21/2020 | 45743 | Net 15 | 4/5/2020 | 200 | 8,400.01 |
| Invoice | 3/28/2020 | 45831 | Net 15 | 4/12/2020 | 193 | 1,840.45 |
| Invoice | 4/4/2020 | 45862 | Net 15 | 4/19/2020 | 186 | 1,774.80 |
| Invoice | 4/11/2020 | 45968 | Net 15 | 4/26/2020 | 179 | 1,774.80 |
| Invoice | 4/24/2020 | 45401 | Net 15 | 5/9/2020 | 166 | 2,291.68 |
| Invoice | 4/18/2020 | 46006 | Net 15 | 5/18/2020 | 157 | 1,317.45 |
| Invoice | 5/16/2020 | 45302 | Net 15 | 5/31/2020 | 144 | 4,531.84 |
| Invoice | 6/18/2020 | 45350 | Net 15 | 7/3/2020 | 111 | 6,583.76 |
| Invoice | 7/23/2020 | 46081 | Net 15 | 8/7/2020 | 76 | 9,221.37 |
| | | | | | | **162,195.22** |

26. Defendant owes a principal balance of $162,195.22.

27. As of November 23, 2020, the accrued late fees at 1.5% per month amount to $16,228.53. The total is $178,423.75.

28. Despite Plaintiff's demand for payment, Defendant failed to pay the balance it owes.

29. Plaintiff engaged counsel and agreed to pay its counsel's reasonable attorneys' fees.

## COUNT ONE – BREACH OF CONTRACT

30. Plaintiff incorporates by reference all the allegations in Paragraphs 1-29 of the Complaint as if fully set out herein.

31. There exists a valid contract, enforceable by Plaintiff against Defendant, to wit, the Agreement.

32. The Agreement is binding upon Plaintiff and Defendant.

33. Plaintiff performed all its contractual obligations owed to Defendant under the Agreement.

34. Plaintiff performed all conditions precedent to performance or such conditions have been waived or excused.

35. Defendant breached the Agreement by failing to perform its contractual obligation to make payment.

36. Plaintiff sustained damages as a result of Defendant's breach of contract.

37. As a result of Defendant's breach, Plaintiff has been damaged in the principal amount of $162,195.22.

38. Pursuant to the Agreement, the accrued late fees at 1.5% per month owed by Defendant are $16,228.53.

39. Plaintiff is entitled to recover its costs and prejudgment interest.

40. Plaintiff is entitled to recover its reasonable attorneys' fees pursuant to contractual provisions providing for Defendant's payment of attorneys' fees.

**COUNT TWO – UNJUST ENRICHMENT / QUANTUM MERUIT**

41. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-29 as if fully set out herein.

42. Count Two is hereby pled in the alternative to Count One.

43. At all relevant times herein, Plaintiff conferred a benefit or benefits to Defendant.

44. Defendant had knowledge of the benefit or benefits that Plaintiff conferred.

45. Defendant voluntarily accepted, retained, appreciated and received the benefit or benefits that Plaintiff provided to Defendant, at the expense of Plaintiff.

46. Defendant was enriched by the benefit or benefits provided by Plaintiff.

47. Defendant unjustly retained a benefit to Plaintiff's detriment.

48. Defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience.

49. Despite the receipt of such enrichments, Defendant refused to compensate Plaintiff for the unjust enrichment of $162,195.22.

## COUNT THREE – ACCOUNT STATED

50. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-29 as if fully set out herein.

51. Count Three is hereby pled in the alternative to Count One and Count Two.

52. This is an action for damages that exceed $75,000.00.

53. Before the institution of this action, Plaintiff and Defendant had business transactions between them and on or about July 23, 2020, they agreed to the resulting principal balance of $162,195.22.

54. Plaintiff rendered a statement of the balance to Defendant, a copy reproduced herein, and Defendant did not object to the statement.

55. Defendant owes Plaintiff $162,195.22 that is due with interest since August 7, 2020 on the account.

56. Throughout the relationship between the parties, Plaintiff has rendered invoices constituting statements of account for amounts owed by Defendant in exchange for services furnished by Plaintiff.

57. During this time, Defendant has retained the aforementioned invoices for a substantial period of time without objection.

58. Defendant has recognized and acknowledged the correctness of the account, as reflected in the invoices submitted by Plaintiff, without contesting same.

59. Defendant's failure to object to the invoices from Plaintiff constitutes an acceptance of the amounts due and owing as reflected in the aforementioned invoices.

60. Defendant failed to make payments to Plaintiff who, as a result, has sustained damages in the principal amount of $162,195.22.

WHEREFORE Plaintiff prays that this Court enter a judgment against Defendant as follows:

A. Principal damages of $162,195.22;

B. Contract-based late fees of at least $16,228.53;

C. Contract-based attorneys' fees in an amount to be determined;

D. Prejudgment interest;

E. Costs of collection; and,

F. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:   */s/ Kenneth E. Chase*
      Kenneth E. Chase
      Florida Bar No. 0017661
      Chase Law & Associates, P.A.
      1141 71st Street
      Miami Beach, FL 33141
      Tel: (305) 402-9800
      Fax: (305) 402-2725
      Email 1: kchase@chaselaw.com
      Email 2: efile@chaselawnational.com

# EXHIBIT A


Employment & Recruiting Solutions

# Staffing Service Agreement

This Staffing Services Agreement ("Agreement") is made and entered into this by and between Affinity Resources, LLC, which has its corporate offices at **800 W. Cypress Creek Rd. Suite 430, FT. Lauderdale, FL** (called "Affinity" in this Agreement) and **Kansas Marine** located at **555 NE 185TH Street Suit 107 Miami, FL 33179** (called "Client" in this Agreement).

**WHEREAS**, Client desires Affinity to locate, recruit and place Affinity personnel on assignment with Client;

**WHEREAS**, Affinity agrees to provide such employees to perform services under Client supervision;

**NOW, THEREFORE**, Client and Affinity in consideration of the mutual promises hereinafter set forth and intending to be legally bound hereby agree as follows:

**1. Duties of Affinity.** Affinity shall provide to Client the services of its employees ("Assigned Employees") as requested by Client. Client shall use the services of Affinity as a provider of Assigned Employees set forth on Exhibit A for Client. Affinity shall manage the provision of services to Client in accordance with the provisions of this Agreement. Affinity agrees to assume full responsibility for paying, withholding, and transmitting payroll taxes; making unemployment contributions; and handling unemployment and workers' compensation claims involving Assigned Employees with respect to compensation that Affinity has agreed to pay.

**2. Payment for Services.** Affinity will invoice Client for services provided and any other authorized out-of-pocket expenses in accordance with this Agreement on a weekly basis. Client shall pay Affinity within **fifteen (15) days** from the date of the invoice. Invoices shall be accompanied by the pertinent timesheets. Client's signature on Affinity' timesheets certifies that the hours shown are correct and that the work was performed to Client's satisfaction and authorizes Affinity to bill Client for the hours worked by the named Assigned Employee. Affinity's bill rates by job categories are attached hereto as Exhibit A, which is incorporated by reference herein. In the event a portion of any invoice is disputed, the undisputed portion shall be paid. Client acknowledges and agrees that in the event an Assigned Employee works more than forty (40) hours in any work week, or 8 hours in a day when required by law, for Client, then that Assigned Employee is entitled to overtime compensation as provided by law and Client agrees to an increase in the bill rate to reflect such additional compensation plus applicable markup.

If Client does not tender payments within thirty (30) days of due date, Affinity shall be entitled to and Client shall pay a late fee of 1.5% per month or the highest amount permitted under applicable law until the date payment is received. Client will reimburse Affinity for all costs of collections, including reasonable attorneys' fees for the collections of outstanding balances.

Client agrees to approve all timesheets on behalf of temporary employees and approved timesheets must be submitted no later than 10 a.m. on Monday. If approved timesheets are not submitted on a timely basis and therefore causes Affinity to have to process another payroll, client will be charged $30 for extra payroll processing fees.

If Client disputes any invoice it must give notice of the dispute to Affinity within ten (10) business days of the date of the invoice. Failure to give timely notice shall constitute a waiver of the right to contest the invoice. All undisputed amounts must be paid notwithstanding the existence of a dispute on other items.

**3. Submittals-Right to Hire.** Resumes submitted to Client are confidential and for Client use only. Client agrees that Affinity is the representative of all candidates for which resumes are submitted to Client by Affinity in response to Client requests or accepted by Client. Accordingly, Client agrees that if any candidate submitted to Client by Affinity is hired either directly, or indirectly through a third party, by Client within three hundred and sixty five (365) days of receipt of the resume, then Client shall pay to Affinity at the time of direct or indirect hire as liquidated damages an amount equal to 20% of the employees annualized first year compensation, including guaranteed bonuses.

1

**4. Conversion and Transition Fees.** Client acknowledges that Affinity incurs substantial expenses for recruiting, testing training, and retaining its employees and Client agrees to obtain the services of each Affinity Temporary Employee only through an order with Affinity. Affinity shall waive its right or claim to any placement fee or conversion fee in the event Client hires directly on to its own payroll or engages as an independent contractor any Assigned Employee at any time after such Assigned Employee has worked at Client's facility for at least **90 days in any one calendar year**, provided that Client has paid to Affinity all invoiced amounts for such Assigned Employee. In the event that Client hires, transfers to another company's payroll, or engages as an independent contractor any Assigned Employee prior to such 90 day period, Client shall pay to Affinity a fee in the amount of twenty percent (20%) of the Assigned Employee's annualized compensation. For the purposes of this section of the Agreement, "Client" shall include any successors, assigns, subsidiaries, parents, and partners of Client, along with affiliates of Client with at least fifty percent (50%) common ownership of Client.

**5. Relationship between the Parties.** The services which Affinity shall render under this Agreement shall be as an independent contractor with respect to Client. Nothing contained in this Agreement shall be construed to create a partnership, joint venture, or association of any kind between Affinity and Client.

**6. OSHA Compliance.** Client will provide Affinity employees with a safe work site and working conditions that comply with the Occupational Safety and Health Act of 1970 and applicable safety and job training, appropriate information, illness and injury prevention programs, hazard communication programs, and all required safety equipment with respect to any hazardous substances or conditions to which employees may be exposed at the work site. Client shall indemnify, defend and hold harmless Affinity and its officers, directors, members, employees and agents from any and all OSAHA claims, fines and penalties arising out of the worksite and training of Affinity employees or otherwise related to the Services provided to the Client by Affinity. Client will also provide Affinity notice of any unsafe conditions or potential hazards at the work site; and notify Affinity immediately of any OSHA or request for information by OSHA.

**7. EEO Compliance.** Client and Affinity affirm and agree that they are equal employment opportunity employers and are in full compliance with any and all applicable anti-discrimination laws, rules, and regulations. Client and Affinity agree not to harass, discriminate against, or retaliate against any employee of the other because of his or her race, national origin, age, sex, religion, disability, marital status, or other category protected by law; nor shall either party cause or request the other party to engage in such discrimination, harassment, or retaliation. In the event of any complaint of unlawful discrimination, harassment, or retaliation by any Assigned Employee, Client and Affinity agree to cooperate in the prompt investigation and resolution of such complaint.

**8. FMLA Compliance.** Client and Affinity agree that for purposes of all statutory and regulatory requirements for employee leaves of absence, including the Family and Medical Leave Act and any similar state or local law, Client and Affinity shall cooperate in compliance with any such requirements.

**9. Confidential Information.** Affinity acknowledges that it may be given access to or acquire information which is proprietary to or confidential to Client or its affiliated companies and their clients and customers. Affinity agrees to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purposes whatsoever other than the providing of services to Client during the term of this Agreement and for a period of five (5) years thereafter. Client acknowledges that during Affinity' performance under this Agreement, Client may be given access to or acquire confidential information of Affinity, all of which provides Affinity with a competitive advantage and none of which is readily available. Affinity' confidential information includes all information regarding Affinity' Assigned and Staff Employees, including but not limited to their names, home addresses, telephone numbers, skills, qualifications, evaluations, availability, record of assignments, and related information. Client agrees that during the term of this Agreement and for a period of five (5) years thereafter, it will not use or disclose to any person or company any confidential information obtained during the term of this Agreement for any reason or purpose, except under the authority of Affinity. Client also agrees that it will use due care and diligence to prevent any unauthorized use or disclosure of such information. Upon termination or expiration of this Agreement or upon request, Client shall return all Affinity' confidential information to Affinity and certify in writing that it has returned all such information to Affinity and has not kept copies thereof in any medium.

**10. Inventions, Patents, Trademarks, and Copyrights.** In relation to the performance of this Agreement, Assigned Employees may create certain works for Client that may be copyrighted or copyrightable under the laws of the United States. To the extent that any such works are created, Assigned Employees will be considered to have created a Work Made for Hire as defined in 17 U.S.C. §101, and Client shall have the sole right to the copyright. In the event that any

2

such work created by Assigned Employee does not qualify as a Work Made for Hire, it is understood and agreed that the entire right, title and interest throughout the world to all works, trademarks, and/or inventions that are conceived of, prepared, procured, generated or produced, whether or not reduced to practice, by Assigned Employee, either solely or jointly with others during the course of, in connection with, or as related to the performance of this Agreement, shall be and hereby are vested and assigned by Assigned Employee to Client. Client shall have the right to file and prosecute, at its own expense, all patent applications, whether U.S. or foreign, on said discoveries and/or inventions. Assigned Employees shall, during any assignment with Client or any time thereafter, provide to Client all documents, information, and assistance requested for the filing or prosecution of any such patent application, for the preparation, prosecution, or defense of any legal action or application pertaining to such discoveries and/or inventions.

**11. Term.** This Agreement shall be for an initial term of one year from the above stated date of this Agreement. This Agreement shall be automatically renewed for successive one-year terms unless modified or terminated in accordance with the provisions of this Agreement. The parties agree to waive any notice prior to automatic renewal of this Agreement that may be required by state law.

**12. Termination.** This Agreement may be terminated by either party upon thirty (30) days' written notice to the other party. Such notice shall be personally delivered or sent by recognized overnight courier or by certified mail, return receipt requested. The parties agree to waive any notice prior to automatic renewal of this Agreement that may be required by state law.

**13. Indemnification.** Client agrees to defend, indemnify, and hold Affinity and its directors, officers, successors, and assigns harmless against any and all liabilities, losses, damages, demands, claims, actions, suits, settlements, judgments, costs, or expenses, including but not limited to reasonable attorney's fees, that Affinity incurs that are proximately caused by the fault, negligence, gross negligence, or recklessness of Client, or Client's officers, employees, or authorized agents, that arise from Client's breach of this Agreement, that arise from risks inherent in Client's business, or that are expressly disclaimed by Affinity in Section 13. Furthermore, Client, at its own expense, shall defend any claim, suit, demand, action or cause of action where such claim, suit, demand, action or cause of action arises from any cause for which Affinity may be entitled to be indemnified and held harmless pursuant to this Section, and Client shall pay all damages, losses, costs, and expenses, including, but limited to reasonable attorney's fees, arising out of such claim, suit, demand, action or cause of action; provided, however, that Affinity shall be entitled to participate in such defense at Affinity' own expense, if it so chooses. Notwithstanding the above, in no event shall Client be liable to indemnify and hold harmless Affinity from any liability, losses, damages, costs, demands, expenses, claims, suits, actions or causes of action arising out of the sole negligence of Affinity. Client agrees to inform Affinity within five (5) business days of its receipt of any claim, demand, or notice for which indemnification hereunder may be sought and to cooperate in the investigation and defense of any such claim, demand, or notice, and failure to give timely notice to Affinity shall constitute a waiver by Client of such claim, demand, or notice.

**14. Limitation of Liability.** Affinity' liability for damages under this Agreement, whether in contract or tort, shall in no event exceed the amount paid by the Client to Affinity for the services from which the claim arose. Affinity expressly disclaims liability for any claim, loss, or liability of any kind whatsoever resulting from Client entrusting Assigned Employee with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables without Affinity' express prior written approval; Client requesting or permitting Assigned Employees to use any vehicle, regardless of ownership, in connection with the performance of services for Client unless Affinity has given its express prior approval in writing; claims by Assigned Employees for benefits, damages, contributions, or penalties under any employee benefit plan, fringe benefit plan, or personnel policy sponsored and maintained by Client, whether or not Client's plans exclude Assigned Employees from coverage; claims by any person relating to any Client product or service; Client's making substantial changes in the Assigned Employee's job duties or risks without Affinity' prior written approval; claims by any person based on allegations that Client's business activities damaged the environment; the conduct of Client's officers, employees, and agents; acts or omissions of any Assigned Employee in the furtherance of Client's particular business; and claims for special, indirect, consequential, punitive, or lost profit damages, however arising, even if Affinity has been advised of the possibility of such damages.

**15. Warranties.** Affinity disclaims all warranties with regard to services rendered under this Agreement, including all implied warranties of merchantability, fitness for a particular purpose, and no infringement.

**16. Injunctive Relief.** Client recognizes and acknowledges that any breach or threatened breach of this Agreement by Client may cause Affinity irreparable harm for which monetary damages may be inadequate. Therefore, Client agrees

3

that Affinity shall be entitled to equitable relief, including temporary and permanent injunctions, in addition to all other remedies available at law or in equity to restrain Client from such breach or threatened breach. Client shall be responsible for any breach of this Agreement by any and all of its employees, agents, officers, directors, representatives, assigns, and successors.

**17. Arbitration. Any controversy or dispute between the parties arising out of this Agreement will be resolved by arbitration under the Federal Arbitration Act and before the American Arbitration Association (AAA) at the AAA location closest to Affinity Resource's office in Broward County. The cost of arbitration will be shared equally by the parties. The arbitrator will have no authority to change any of the terms of this agreement. All decisions of the arbitrator will be final and binding upon the parties. The prevailing party will be awarded reasonable attorney's fees incurred in the arbitration in addition to any other relief awarded. Judgment upon any award rendered by the arbitrator may be entered in any court of competent jurisdiction.**

**18. Attorney's Fees and Costs.** The prevailing party will have the right to collect from the other party its reasonable attorney's fees, costs, and necessary disbursements incurred in enforcing this Agreement.

**19. Miscellaneous.** Affinity shall not be liable for, and is excused from, any failure to perform or for delay in the performance of its obligations under this Agreement due to causes beyond its control, including without limitation, interruptions of power or telecommunications services, failure of Affinity' suppliers or subcontractors, acts of nature, governmental actions, fire, flood, natural disaster, or labor disputes. No failure of Affinity to pursue any remedy resulting from a breach of this Agreement by the Client shall be construed as a waiver of that breach by Affinity or as a waiver of any subsequent or other breach unless such waiver is in writing and signed by Affinity. In the event any provision of this Agreement shall be invalid, illegal or unenforceable in any respect, such a provision shall be considered separate and severable from the remaining provisions of this Agreement, and the validity, legality or enforceability of any of the remaining provisions of this Agreement shall not be affected or impaired by such provision in any way. Client may not assign this Agreement or any rights or obligations of Client under this Agreement, in whole or in part, without the express written consent of Affinity. Affinity may freely assign this Agreement and may contract with additional Clients. This Agreement shall be governed by and construed in accordance with the laws of the state of Florida regardless of its choice of laws provision. Any dispute or action arising out of or related to these terms and conditions will be adjudicated solely in the applicable federal or state courts of competent jurisdiction located in the county of Miami-Dade, Florida. The parties each consent to the jurisdiction and venue of those courts.

20. **Notices.** Whenever any notice is required or authorized to be given hereunder, such notice shall be given in writing and sent by certified mail, expedited mail service, fax or email. Fax and email notices are subject to electronic confirmation of delivery. Any such notice, if sent by Client to Affinity shall be addressed as follows:

Affinity Resources, LLC
800 W Cypress Creek Road, Ste. 430
Fort Lauderdale, FL  33309

If sent by Affinity to Client, any such notice should be addressed as follows:

_____
_____
_____


**21. Entire Agreement.** All additional addendums to this Agreement shall be incorporated in and constitute parts of this Agreement. This Agreement and the additional addendums, each amended from time to time, constitute the entire understanding between the parties in relation to the subject matter hereof and supersede all prior discussions, agreements and representations, whether oral or written and whether or not executed by Affinity or Client. Unless otherwise provided in this Agreement, no modification, amendment or other change may be made to this Agreement or any part thereof unless reduced to writing and executed by an authorized representative of both parties.

4

IN WITNESS WHEROF, the parties hereto have executed this Staffing Service Agreement on the date stated above.

Affinity Resources, LLC:                          Client:

By: _____                     By: _____
      Authorized Signature                              Authorized Signature

Print: PHIL AWAKER                                Print: REYNA B. NOVELO

Title: MANAGING PARTNER                           Title: R. V.P. OF OPERATIONS

Date: 11/20/19                                    Date: 11.20.2019

5

**Exhibit A**

| Job Title | Bill Rate | OT Bill Rate | Start Date |
|---|---|---|---|
| **Light industrial** | **40% Markup** | **Mark-up x 1.4** | |

**IN WITNESS WHEREOF**, the parties hereto have made and executed this Agreement as of the day and year first above written.

Kansas Marine Co.

_Reyna B Novelo_
Print Name

_[signature]_
By

_Sr V.P. Operations_
Title

_11-20-2019_
Date

**Affinity Resources, LLC**

_Phil Alvarez_
Print Name

_[signature]_
By

_Managing Partner_
Title

_11/20/19_
Date

6